OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1907.

---

*(Continued from Volume 208)*

---

## LANYON et al. v. CHESNEY et al., Appellants.

### Division Two, December 24, 1907.

1. **DISMISSAL IN VACATION: Set-off.** The dismissal by plaintiff of his suit in vacation does not affect the defendant's right to prosecute any set-off or counterclaim he pleaded in his answer before the suit was dismissed.

2. ———: ———: **What Is.** But matter which is merely pleaded as a defense, or which shows that plaintiff never had a cause of action, cannot be said to be either a set-off or counterclaim. So that defendant's answer in plaintiff's suit for specific performance of a contract for the sale of plaintiff's land, which does not deny the execution of the contract, but attempts to vary and put a different construction on the contract, does not plead a set-off or counterclaim; and that being the case plaintiff has the right to an absolute and unconditional dismissal of his suit or to take a nonsuit at any time before final submission, and defendant cannot, by motion to reinstate after such dismissal, keep the case in court in order that he may set up, by amended answer or cross-bill, a set-off or counterclaim.

1                  (1)

3. ———: **Restoration to Property: Execution Under Void Judg-ment.** Defendant has a right to have restored to him any property of which he was deprived and which plaintiff acquired under a judgment for plaintiff which was reversed on appeal, whether by execution or otherwise, and such right is in no way affected by plaintiff's dismissal of his suit after obtaining possession of such property; and that is the rule without regard to the merits of the original cause of action or grounds of defense.

4. ———: ———: **What Execution Should Contain: Damages.** Where the trial court found that the plaintiff entered into possession under and by reason of a vacated judgment in his favor, and awarded execution for restitution of the premises to defendant and directed that "there be inserted in said writ a general execution clause for the levy of the costs and damages, amounting to $500, hereby adjudged against the property and effects of plaintiff," the Supreme Court, where the trial court's findings indicate fairness and impartiality, will not place defendant in immediate possession, and adjudge plaintiff to pay defendant the full and fair rental value of the premises and proceed to ascertain the same. The amount of damages is a matter peculiarly within the province of the trial court.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville*, Judge.

AFFIRMED.

*George Hubbert* with *E. E. Chesney* for appellants.

(1) The facts in defendants' answer afforded cause for relief either by rescission or damages or in diminution of the price to be paid by defendants for the premises. Liese v. Meyer, 143 Mo. 555; McGrew v. Railroad, 87 Mo. App. 250; Haeusler v. Holman Co., 49 Mo. App. 636; Bevin v. Powell, 11 Mo. App. 216, 83 Mo. 365. (2) Aside from our statute of set-offs and counter-claims, appellants are entitled to protection from the consequences of such a vacation dismissal as the one in question here. Browning v. Chrisman, 30 Mo. 353; Wilder v. Boynton, 63 How. Pr. (N. Y.)

587; McKesson v. Hunt, 64 N. C. 502; Sawyers v. Langford, 6 Bush (68 Ky.) 539. (3) The restitution adjudged by this court should be made effective and adequate, before the original cause proceeds upon its merits or is otherwise disposed of. Reynolds v. Harris, 14 Cal. 668; Ming v. Sugget, 34 Mo. 364; Fleming v. Riddick (Va.), 50 Am. Dec. 119; McCracken v. Paul, 55 Ark. 553; Ex parte Walter (Ala.), 18 Am. St. 103; Haebler v. Myers (123 N. Y.), 28 Am. St. 589; Northwestern Co. v. Brock, 139 U. S. 216; Keck v. Allender, 4 W. Va. 420; First Natl. Bk. v. Elliott, 60 Kan. 172; First Natl. Bk. v. Price, 65 Kan. 853; Denning v. Yount, 66 Kan. 766; Norton v. State, 63 Neb. 34; McFadden v. Swinnerton (Ore.), 62 Pac. 12; Claflin v. Pfeifer, 84 Tex. 23. (4) Respondent Mink cannot be heard to say on this appeal that he did not acquire possession of the premises in question by reason of the erroneous and vacated decree, nor to dispute appellant's right to restitution from him as having been erroneously aided by the State's court in doing them a substantial wrong. The finding of the learned judge below, that respondent Mink's possession was by reason of the reversed and vacated decree, is abundantly sustained by the evidence. (5) The measure of compensation is the fair and reasonable value of the premises including the water-power thereon and available for application to operation of machinery and generation of electrical force for which the same was designed and adapted; and that without regard to what use was actually made of the premises by Mink; for the true measure to defendants is not what plaintiff profited but what defendant lost by the erroneous decree, with interest. Schoonover v. Osborne, 90 N. W. 844; Atkinson v. Dixon, 96 Mo. 586; Cutter v. Waddington, 33 Mo. 286; Phillips v. Stewart, 87 Mo. App. 493; Sedg. & Wait, Tr. Title to Land, sec. 665; Campbell v. Brown, 2 Wood (U. S.), 349; 10 Am. and Eng. Ency. Law,

542; Credle v. Ayres (N. C.), 35 S. E. 128; Averett v. Brady, 20 Ga. 527.

*J. D. Harris, E. O. Brown* and *R. A. Mooneyham* for respondents.

(1)   Plaintiffs had the unquestioned right to dismiss the suit.   Pullis v. Pullis, 157 Mo. 588; Houston's Admr. v. Thompson, 87 Mo. App. 63.   (2)   A mere inquiry of damages with restitution according to the mandate of the Supreme Court, is not a trial within the meaning of the statute, and the dismissal in vacation did not take this question out of court nor sweep away defendants' right to restitution and damages. The rights of defendants to restitution and rents and profits are established by the judgment of reversal, and the inquiry is directed solely to the amount of such damages.   The theory of defendants, therefore, that the vacation dismissal was effective to carry not only the parties but the question of restitution out of court, is clearly untenable.   A trial, under our statute, is defined to be "the judicial examination of the issues between the parties, whether they be issues of law or of fact."   Issues are made under the statute, as well as at common law, by   the   pleadings.   In awarding restitution and damages on reversal, in pursuance of the mandate of this court, there can be no issues to be tried, and no trial can be had in reference to those matters within the meaning of the term as used in the Code, and understood by the profession. Crossland v. Admire, 118 Mo. 91; Ming v. Suggett, 34 Mo. 364; Atkinson v. Dixon, 96 Mo. 582; 18 Ency. Pl. & Pr., 871.   (3)   It is further urged that the damages allowed defendants by the court below for rents and profits of the property are grossly inadequate. A careful reading of all the evidence will show conclusively that defendants were treated very fairly in that respect.   It is immaterial whether defendants

could or would have realized any greater profit had the mill been properly equipped with electrical machinery and they remained in possession of the property with authority to raise the altitude of the dam so as to afford sufficient power to run the various mining plants in that locality.

BURGESS, J.—This case was before this court upon a former appeal by defendants, and will be found reported in 186 Mo. 540, where a full and fair statement of all the facts of the case upon, to and including the first trial, is given by Judge Fox who wrote the opinion in the case. The judgment was then reversed and the cause remanded.

The cause was then pending in the circuit court of Jasper county, but after the filing of the mandate of the Supreme Court in the circuit court of that county the venue of the cause, on the application of defendants, was changed to Greene county. After the transcript of the record of the cause was filed in the office of the clerk of the circuit court of Greene county, plaintiffs, in vacation, May 5, 1905, upon the payment of all costs which had accrued in the cause, with the consent of the clerk of said court, dismissed the cause, and the clerk made a minute on the record to that effect.

On May 17, 1905, during the May term, 1905, of the Greene County Circuit Court, defendants filed their motion to set aside said order of dismissal, to reinstate the cause, and for restitution of the premises, and damages for the taking and detention thereof, and asking that plaintiffs be enjoined from enforcing their claims against said premises until such restitution should be made. Upon the presentation of this motion, the court appointed a commissioner to take depositions therein, which depositions were returned to and filed in the Greene Circuit Court on January 8,

1906. While said motion was pending, on June 23, 1906, defendants tendered and offered to file their "joint and amended answer and cross-bill."

Plaintiffs resisted the said motion upon the ground that the cause had been disposed of by vacation dismissal, and that the court had no jurisdiction in the premises as to any feature of the motion. After amendment of the motion by the addition of a supplemental claim for direct injuries to the mill by Mink, pending the motion, a final hearing was had on March 14, 1907, the court awarding restitution of the possession of the property in question by plaintiff Mink to defendants, with damages in the sum of $500 and costs incident to the motion, on account of the fact that Mink had taken and held possession of the premises in question by virtue of the erroneous and vacated decree. The motion, as to all other matters mentioned therein, was overruled by the court, and the judgment for possession was combined with an order that the writ of possession must contain an execution clause for $500 damages, so that defendants could not sue out execution of the writ of possession without thereby waiving appeal from the adverse parts of the judgment, to all which defendants excepted. Mink continues in possession of the Quaker Mills premises and property.

From the judgment of the court defendants appeal.

Counsel for the defendants present a number of propositions of law respecting errors alleged to have been committed by the trial court prejudicial to defendants. The first is that the vacation dismissal of the suit by plaintiffs on May 5, 1905, did not finally dispose of the case or the subject of the action, nor cut off defendants' rights or remedies in relation thereto.

Under the provisions of section 639, Revised Stat-

utes 1899, a plaintiff has the right to dismiss his suit
or take a nonsuit at any time before final submission
to the jury, or to the court sitting as a jury, or to
the court; and, by section 797, the right is conferred
upon the plaintiff in any suit in any court of record
to dismiss such suit in the vacation of the court, upon
the payment of all costs that may have accrued.　By
section 4499 it is provided that such dismissal shall
not operate to dismiss set-off, and "the dismissal or
any other discontinuance of the plaintiff's action, in
which such set-off or counterclaim shall have been filed,
shall not operate to dismiss or discontinue such set-off
or counterclaim."

Prior to the revision of 1889, when section 8172,
now section 4499, Revised Statutes 1899, was added, it
was several times, in effect, ruled by the Supreme
Court that when the defendant answered and pleaded
a set-off or counterclaim, he could not, if plaintiff
failed to appear at the trial, or take a nonsuit, take a
verdict and judgment against him for the amount of
his set-off and counterclaim.　[Nordmanser v. Hitch-
cock, 40 Mo. 178; Fink v. Bruihl, 47 Mo. 173; Martin v.
McLean, 49 Mo. 361.]　But in order to remedy this
seeming injustice to defendants who had and pleaded
set-offs and counterclaims in their answers to actions
against them, said section 4499 was added, and since
that time the dismissal or nonsuit of plaintiffs no longer
carries with it the set-off or counterclaim of a de-
fendant, but such is proceeded with as an independent
suit instituted by the defendant.　The consequence is
that the cases above referred to are no longer the law
in cases where the defendant files a set-off or counter-
claim.　[Pullis v. Pullis, 157 Mo. 565.]　This same
question was before the St. Louis Court of Appeals in
the case of Atkinson v. Carter, 101 Mo. App. 477. The
court said:

"The general rule in respect to a plaintiff's right

to dismiss before final submission is, that where the answer sets up new matter demanding affirmative relief for which the defendant might maintain a separate action against the plaintiff, the defendant, as to such new matter, is deemed a plaintiff and cannot thereafter be deprived of his right to a trial of his cause by a voluntary dismissal or nonsuit by the plaintiff. [6 Ency. Pl. and Pr., 848, and cases cited in the notes.] But this rule has never obtained in this State. On the contrary, the Supreme Court, except in special proceedings, has construed the right of a plaintiff to dismiss or take a nonsuit under section 632, supra, before final submission, to be absolute and unconditional. With this construction before it, the Legislature in 1889 enacted section 8172, supra. This section does not interfere with or in the least abridge a plaintiff's right to dismiss a suit or take a nonsuit before final submission; but it secures to a defendant who has filed a counterclaim a new right; that is, it retains the counterclaim or set-off in court after the dismissal of plaintiff's cause of action and authorizes a trial and judgment thereon. It does not modify or qualify section 632, supra, in the least, and it is apparent that the Legislature did not intend by section 8172, supra, to abridge plaintiff's right to dismiss a suit or take a nonsuit as that right had been theretofore defined by the Supreme Court, and, we think, the rule prevails in this State that in all ordinary actions at law or in equity the plaintiff has the right before final submission to dismiss his suit or take a nonsuit, irrespective of the fact that matters are pleaded in the answer which would entitle the defendant to affirmative relief and for which he might maintain a separate action against the plaintiff.''

The dismissal of the suit did not affect defendants' right to prosecute any set-off or counterclaim they might have pleaded in their answer before the dismis-

sal of the suit. A critical examination of the answer, however, satisfies us that no set-off or counterclaim is pleaded therein. It does not deny the execution of the contract, but avers that the contract is not as set out in the petition, but a different contract, or, more strictly speaking, the averments of the answer merely attempted to vary the terms of or put a different construction on the contract which the suit was instituted to specifically enforce. Matter which is merely pleaded as a defense, or which shows that plaintiff never had a cause of action, cannot be said to be either a set-off or counterclaim. [Jones v. Moore, 42 Mo. 413.] With relation to the nature of the defense sought to be set up by this answer, Judge Fox, on the former appeal, said: "We express no opinion upon the allegations of the answer as to the false and fraudulent representations, for the reason that the defendant has indicated no purpose in making them. It was not for the purpose of reducing the amount of the purchase-money by damages sustained, for no amount of damages is claimed, and no such relief is sought. It cannot be for the purpose of disaffirming or rescinding the contract, for to do that the possession of the premises must be restored or an offer made to do so." It follows that the court did not err in refusing to set aside the dismissal and reinstate the cause, nor in refusing to permit defendants to file their joint and amended answer after the suit had been dismissed, for there was no petition pending to answer.

We entertain no doubt as to the right of defendants to have restored to them, as against the other parties to this action, any property or property rights of which they were deprived and which plaintiffs acquired under the first judgment, whether by execution or otherwise, and that such right will not in any way be affected by plaintiffs' dismissal of their suit after

obtaining possession of such property. [Gott v. Powell, 41 Mo. 416; Vogler v. Montgomery, 54 Mo. 577; Jones v. Hart, 60 Mo. 362; Colburn v. Yantis, 176 Mo. 670; Carson's Admr. v. Suggett's Admr., 34 Mo. 364.] And this, too, without regard to the merits of the original cause of action or grounds of defense.

Plaintiffs contend, however, that Mink did not obtain possession of the property by virtue of the reversed judgment, but under the deed from Lanyon to Mink dated July 26, 1901, and that, therefore, the defendants are not entitled to restitution. But both the evidence and the finding of the court are to the contrary. The court in its findings expressly says "that plaintiff Mink did enter upon and into the premises in question and possess and hold the same by reason of the reversed and vacated decree of the circuit court herein, as entered in Jasper county, and that he has continued to occupy and possess the same as yet he does by reason thereof, and that the reasonable and just rental value of the said premises during such possession which was lost to defendants by reason of said vacated decree is to the present date five hundred dollars." Besides, under the facts disclosed by this record, Mink is in no position to say that he did not acquire possession of the premises in question through and under the erroneous and vacated judgment.

The vital question in the case at bar is as to what matters should have been included in the order and judgment of restitution from which this appeal is prosecuted. Notwithstanding the court ordered restitution of the land in question to defendants and allowed them damages in the sum of five hundred dollars for the loss of said premises during the possession and occupancy thereof by plaintiff Mink, under said decree and deed, as well as costs incurred in the matter of the motion and assessment of rent values and damages, and ordered that "in execution of the forego-

ing judgment, there be issued out of this court and by its clerk a writ of restitution addressed to the sheriff of Jasper county, in due form, and commanding the said plaintiff Mink to yield and that the defendants be given possession of the said premises peaceably and fully and without delay, and that there be inserted in said writ a general execution clause for the levy of the ,damages and the costs hereby adjudged against the property and effects of the said plaintiff Mink,'' the defendants insist that this court should place them in immediate possession of the property in question and specifically adjudge the plaintiff Mink to pay to defendants the full and fair rental value of the premises, and ask that this court proceed to ascertain the same.   The court below did not refuse to restore to defendants the possession of all the property of which they had been deprived through the vacated decree, but defendants claim that the court did not adjudge and order that plaintiff Mink pay to defendants the full and fair rental value of the premises.   This was, it seems to us, a matter peculiarly within the province of the trial court, who saw the witnesses on the stand and heard them testify. That court was in a much better position to pass upon the weight of the testimony relative to the rental value than we are, and there is nothing in the court's finding that does not indicate the utmost fairness and impartiality.   We must, therefore, decline to interfere with the finding and judgment.

The judgment is affirmed.   All concur.